IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

FILED
JUL 27 2022
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

JOSEPH JAMES CAIN BENSON,

Petitioner,

v.

CRIMINAL ACTION NO. 4:17-cr-45(01)
CIVIL ACTION NO. 4:21-cv-89

UNITED STATES OF AMERICA,

Respondent.

*MEMORANDUM OPINION AND ORDER*

Before the Court is Joseph James Cain Benson's ("Petitioner") pro se Motion to Vacate, Set Aside, or Correct a Sentence pursuant to 28 U.S.C. § 2255. Pet'r's Mot. Vacate, ECF No. 240 ("Pet'r's Mot."). The Government opposed the Motion and Petitioner replied. Resp't's Mem. Opp'n to Pet'r's Mot. Vacate, ECF No. 255 ("Mem. Opp'n"); Pet'r's Reply to Resp't's Mem. Opp'n to Pet'r's Mot. Vacate, ECF No. 263 ("Pet'r's Reply"). The matter is now ripe for judicial determination. Having reviewed the Motion and relevant filings, the Court finds that a hearing is not necessary to address Petitioner's Motion. *See* 28 U.S.C. § 2255(b) (A court shall grant a prompt hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.").[1] For the reasons set forth below, Petitioner's Motion is **DENIED**.

## I. FACTUAL AND PROCEDURAL HISTORY

On April 12, 2017, Petitioner and two co-defendants were named in a one-count Indictment. Indictment, ECF No. 7. On May 25, 2017, Attorney Lawrence Woodward, Jr. was appointed as attorney for Petitioner pursuant to the Criminal Justice Act of 1964. On October 16, 2017, Petitioner and three co-defendants were named in a one-count Superseding Indictment.

---

[1] Petitioner's request for an evidentiary hearing is therefore **DENIED**. *See* Pet'r's Mot. at 43.

1

Supers. Indictment, ECF No. 57. Count One charged Petitioner, and each of his co-defendants, with Use of a Firearm Resulting in Death, in violation of 18 U.S.C. §§ 924(c)(1) and (j), and 2. *Id.* On November 30, 2017, Petitioner pled not guilty. Arraign. Mins., ECF No. 81. On April 10, 2018, the Court commenced a six-day jury trial. Open Court Proceed'g Mins., ECF Nos. 109-13, 115, 118. On April 17, 2018, the jury returned a guilty verdict on Count One of the Superseding Indictment with respect to Petitioner. Jury Verdict, ECF No. 119.

According to the Presentence Investigation Report ("PSR"), prior to March 13, 2009, co-defendant Bryan Brown ("Brown") and at least two others targeted and conducted surveillance on Louis Joseph ("Joseph") for the purpose of robbing him of drugs and/or money. Presentence Investigation Rep. ¶ 7, ECF No. 162 ("PSR"). Co-defendant Mark Wallace ("Wallace"), who had a reputation for successful home invasions and robberies, learned of the target on Joseph and conspired with Brown to conduct a home invasion. *Id.* Wallace recruited Petitioner and Rosuan Kindell ("Kindell"), both of whom resided in Boston, Massachusetts, to help commit the home invasion. *Id.* Petitioner and Kindell arrived in Williamsburg, Virginia, by Greyhound bus on March 12, 2009, and were in telephone contact with Wallace. *Id.* at ¶ 8. On March 13, 2009, Brown arrived at Joseph's home in the mid-to-late morning hours. *Id.* at ¶ 9. Petitioner and Kindell entered the residence by kicking in the door. *Id.* Joseph and his girlfriend's five-year-old son, J.W., were present in the home. *Id.* at ¶ 10. In an interview with law enforcement, J.W. stated he was playing video games in his room when he heard people talking in the living room. *Id.* He observed Joseph and two unknown Black males standing in the living room. *Id.* Joseph told J.W. to go back into the bedroom. *Id.* J.W. heard the individuals tell Joseph to shut up. *Id.* During the home invasion, Joseph was shot and killed. *Id.* at ¶ 9.

A white lawn chair with blood was found in the living room of Joseph's home. *Id.* at ¶ 11.

According to Joseph's girlfriend, the white lawn chair was not in the living room when she left the home that morning. *Id.* A blood sample was taken from the chair and submitted to the Eastern Virginia Forensic Crime Laboratory, and was a positive match for Petitioner. *Id.* An autopsy report revealed Joseph suffered five to six gunshot wounds to his torso and thighs. *Id.* at ¶ 14. Joseph also suffered injuries all over his body, including abrasions to his lower lip, neck, right elbow, left knee, left shin and back of his left calf, a scalp laceration, and bruising above his left elbow. *Id.* That same day, Brown contacted an unindicted co-conspirator and indicated he had two firearms. *Id.* at ¶ 12. He identified one as a Smith and Wesson Ruger, the same type of weapons used to murder Joseph. *Id.* Two firearms were later recovered in New York, New York, and determined to match the casings and bullets recovered from the murder scene and Joseph's body. *Id.* at ¶ 13. Greyhound bus records indicated that Petitioner and Kindell returned to Boston on March 14, 2009. *Id.* at ¶ 15. On January 12, 2010, Petitioner was arrested at his home and charged with murder, use of a firearm in a felony, and possession of a firearm by a felon. *Id.* at ¶ 16. On December 10, 2010, Petitioner's charges were nolle prossed in Newport News General District Court. *Id.*

On July 11, 2017, case agents interviewed Confidential Informant #1 (CI #1), during which CI #1 advised them that Petitioner and Kindell were members of the street gang "Columbia Point Dawgs," the largest gang in Boston, Massachusetts. *Id.* at ¶ 21. Petitioner was known as "Joe B" and as the enforcer. *Id.* After Petitioner was arrested in January 2010 for Joseph's murder, Kindell told CI #1 that he and Petitioner went to Virginia because they had a target for a drug robbery. *Id.* Kindell indicated that they went into the house and had a tussle with Joseph, and Petitioner shot him. *Id.* Kindell also advised CI #1 that he had a source of drugs in Virginia, and that he and Petitioner were traveling to Virginia to "hustle." *Id.* Petitioner also contacted CI #1 and asked for a firearm prior to Joseph's murder, but CI #1 advised he did not have a firearm for Petitioner. *Id.*

3

Petitioner was assessed a Criminal History Category of IV, Total Offense Level of 43, and had a recommended U.S. Sentencing Guidelines range of life in prison. *Id.* at ¶¶ 78-79. On July 24, 2018, the Court sentenced Petitioner to life imprisonment, followed by five years of supervised release. J., ECF No. 157. On July 27, 2018, Petitioner timely appealed to the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit"). Notice Appeal, ECF No. 161. On April 24, 2020, the Fourth Circuit affirmed Petitioner's conviction and sentence. *United States v. Benson*, 957 F.3d 218 (4th Cir. 2020). Petitioner did not appeal the Fourth Circuit's decision.

On July 12, 2021, Petitioner filed the instant Motion. Pet'r's Mot. On July 15, 2021, the Court dismissed Petitioner's Motion without prejudice as untimely. Order Dismiss'g Pet'r's Mot. Vacate, ECF No. 241. On July 26, 2021, Petitioner filed a Motion for Reconsideration of the Court's Order, arguing that the 28 U.S.C. § 2255 one-year statute of limitations period begins when a criminal judgment becomes final, which, for a petitioner who does not seek certiorari after a court of appeals affirms his conviction, occurs when the time for filing certiorari expires. Pet'r's Mot. Reconsid., ECF No. 242. On July 29, 2021, Petitioner filed a Motion to Reinstate his Motion to Vacate, arguing the same. Pet'r's Mot. Reinstate Pet'r's Mot. Vacate, ECF No. 243. On August 5, 2021, the Court granted Petitioner's Motions for Reconsideration and to Reinstate his Motion to Vacate, finding Petitioner had offered a meritorious reason to warrant a change in the Court's ruling because his argument was consistent with *Clay v. United States*, 537 U.S. 522, 525 (2003). Order Grant'g Pet'r's Mot. Reconsid. & Pet'r's Mot. Reinstate Pet'r's Mot. Vacate, ECF No. 244. Accordingly, the Court found that Petitioner had timely filed the instant Motion. *Id.* On August 5, 2021, the Court therefore ordered the Government to respond. Order to Respond, ECF No. 245.

Petitioner asserts six ineffective assistance of counsel claims[2]: (1) trial counsel failed to

---

[2] As the Government notes, the substance of some of Petitioner's claims appear to challenge the validity of his conviction rather than the effectiveness of his counsel. Mem. Opp'n at 5. Yet, Petitioner explicitly states in his

4

challenge robbery as an element under the Hobbs Act; (2) trial counsel failed to challenge interference with commerce under the Hobbs Act; (3) trial counsel failed to object to Jury Instruction Number 22 as unconstitutionally vague; (4) trial counsel failed to raise a double jeopardy challenge to Petitioner's conviction under §§ 924(c) and 924(j); (5) trial counsel failed to request a limiting instruction as to the DNA evidence introduced at trial; and (6) trial counsel deprived Petitioner of his statutory right to two attorneys pursuant to *United States v. Boone*, 245 F.3d 352 (4th Cir. 2001). *See* Pet'r's Mot. at 20-46. On October 22, 2021, the Government replied in opposition. Mem. Opp'n. On November 22, 2021, Petitioner replied. Pet'r's Reply.

## II. LEGAL STANDARD

### A. Section 2255

Section 2255 allows a federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . [to] move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255. In a § 2255 motion, the petitioner bears the burden of proving his or her claim by a preponderance of the evidence. *See Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958). Additionally, pro se filers are entitled to more liberal construction of their pleadings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Motions under § 2255 generally "will not be allowed to do service for an appeal." *Sunal v. Large*, 332 U.S. 174, 178–79 (1947). For this reason, issues already fully litigated on direct appeal may not be raised again under the guise of a collateral attack. *United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013). Issues that should have been raised on direct appeal are deemed waived,

---

Motion that he "submits all issues under ineffective assistance of counsel." Pet'r's Mot. at 19. In order to give Petitioner the benefit of the doubt in light of his pro se status, construe his pleadings liberally, and avoid procedural default, the Court will analyze his claims under the ineffective assistance of counsel standard. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *United States v. Mikalajunas*, 186 F.3d 490, 492 (4th Cir. 1999).

5

procedurally defaulted, and cannot be raised on a § 2255 motion. *United States v. Mikalajunas*, 186 F.3d 490, 492 (4th Cir. 1999). However, an individual may raise a procedurally defaulted claim if he or she can show (1) "cause and actual prejudice resulting from the errors of which he complains" or (2) that "a miscarriage of justice would result from the refusal of the court to entertain the collateral attack. . . [meaning] the movant must show actual innocence by clear and convincing evidence." *Id.* at 492–93. To demonstrate cause and prejudice, a petitioner must show the errors "worked to [his or her] actual and substantial disadvantage, infecting [his or her] entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). Ineffective assistance of counsel claims should generally be raised in a collateral motion instead of on direct appeal and constitute sufficient cause to review a procedurally defaulted claim. *See Untied States v. Benton*, 523 F.3d 424, 435 (4th Cir. 2008); *Mikalajunas*, 186 F.3d at 493.

### B. Ineffective Assistance of Counsel Claim

A viable ineffective assistance of counsel claim arises when "counsel's conduct so undermined the proper functioning of the adversarial process that the trial did not result in a just outcome." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). An ineffective assistance of counsel claim is properly raised on a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal unless the record conclusively shows ineffective assistance. *United States v. Williams*, 977 F.2d 866, 871 (4th Cir. 1992). To prove a claim of ineffective assistance of counsel, a petitioner must make two showings.

First, a petitioner must show that counsel's performance was deficient. *Id.* at 687. Counsel's errors must have been so serious that he or she was not actually functioning as "counsel" as guaranteed by the Sixth Amendment. *Id.* To demonstrate deficient performance, a petitioner must show "that counsel's representation fell below an objective standard of reasonableness"

under the prevailing norms of the legal community. *Id.* at 688. "Judicial scrutiny of counsel's performance must be highly deferential," so "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. That presumption is even greater when counsel's decisions represent strategic tactical decisions requiring "assessment and balancing of perceived benefits against perceived risks." *United States v. Terry*, 366 F.3d 312, 317 (4th Cir. 2004). A petitioner bears the burden of rebutting this presumption. *Strickland*, 466 U.S. at 689.

Second, a petitioner must show that the deficient performance prejudiced the defense. *Id.* at 687. In other words, counsel's errors must have been so serious that the petitioner was deprived of a fair trial with a reliable result. *Id.* To demonstrate prejudice, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The United States Supreme Court defines a reasonable probability as "a probability sufficient to undermine confidence in the outcome." *Id.* In short, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgement of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. If a petitioner cannot meet either component of the *Strickland* test, the ineffective-assistance claim will fail. *Id.* at 700. The Court need not address both components of the test if petitioner makes an insufficient showing on one prong. *Id.* at 697.

### III. DISCUSSION

Petitioner asserts that his trial counsel provided ineffective assistance by failing to: (1) challenge robbery as an element under the Hobbs Act; (2) challenge interference with commerce under the Hobbs Act; (3) object to Jury Instruction Number 22 as unconstitutionally vague; (4) raise a double jeopardy challenge to Petitioner's conviction under §§ 924(c) and 924(j); (5) request

a limiting instruction as to the DNA evidence introduced at trial; and (6) request two attorneys pursuant to 18 U.S.C. § 3005 and *Boone*, 245 F.3d 352. *See* Pet'r's Mot. at 20-31, 36-46.

### A. Failure to Challenge Robbery as an Element Under Hobbs

Petitioner first argues that his trial counsel provided ineffective assistance by failing to challenge robbery as an element under the Hobbs Act. Pet'r's Mot. at 20. In substance, however, Petitioner argues that his counsel was ineffective by not objecting to the Government's DNA evidence.[3] *See id.* at 20-26. Specifically, Petitioner states that his counsel "was ineffective for not objecting to the government[']s assertion, that the defendant Mr. Benson was at the scene of the crime because of his DNA." Pet'r's Mot. at 21. In support, he cites to a portion of the transcript of the Government's closing argument at trial, in which the Government argued that the jury knew "Benson was at the scene of that murder with those firearms because [they had] his DNA, his blood left behind on the chair." *Id.* at Ex. A.

Yet, as the Fourth Circuit mentioned on appeal, "[i]n closing, Benson's counsel argued that the DNA evidence with respect to the blood sample was unreliable." *Benson*, 957 F.3d at 236. At trial, counsel contends that he "challenged the DNA evidence by fully analyzing and reviewing all the evidence related to the DNA, reviewing all reports and testing materials, and cross-examining the expert called by the United States." Mem. Opp'n at Ex. 1, at ¶ 4; *see also* Pet'r's Mot. at Ex. C (transcript testimony of counsel cross-examining the forensic expert). Counsel found that "[t]here was no basis in law or fact to object to the admission of the DNA . . . [because] [i]t was located at the crime scene and was properly analyzed at a certified laboratory." *Id.* at ¶ 5. At trial, however, counsel notes that he "argued vigorously to the jury that the evidence was not sufficient

---

[3] The Court recognizes that much of Petitioner's argument and the case law to which he cites in support effectively challenge the sufficiency of the DNA evidence to support his conviction. *See* Pet'r's Mot. at 21-26. However, because Petitioner frames this argument in terms of his counsel's failure to object to such evidence, the Court will evaluate it accordingly. *See supra* note 2.

8

to prove the Defendant's guilt beyond a reasonable doubt . . . pointing out that there was no evidence of when the Defendant's DNA was placed in the location where it was found." *Id.* at ¶ 6.

As a preliminary matter, Petitioner fails to demonstrate that counsel acted in a constitutionally deficient manner because the record demonstrates that counsel challenged and argued against the sufficiency of the DNA evidence throughout the trial in the precise ways that Petitioner claims he did not. *Strickland*, 466 U.S. at 687. Insofar as Petitioner challenges counsel's particular decision not to object to the Government's mention of the DNA evidence during its closing argument, the Court finds that the Government's mention of such was not improper and there was therefore no basis to object. *See United States v. Bonner*, 648 F.3d 209, 213 (4th Cir. 2011) ("[A] conviction may rely entirely on circumstantial evidence."). Even if counsel believed there was a basis to object, however, it was reasonable to refrain from doing so during the Government's closing argument and to rely, instead, on his own closing argument and the challenges he made throughout the trial. *See Bennett v. Angelone*, 92 F.3d 1336, 1349 (4th Cir. 1996) ("[R]efraining from objecting to avoid irritating the jury is a standard trial tactic."); *see also Terry*, 366 F.3d at 317. The Court therefore finds that counsel's performance was not deficient and, even if it were, there is no reasonable probability that the result of the trial would have been different. *Strickland*, 466 U.S. at 687-94.

### B. Failure to Challenge Interference with Commerce Under Hobbs

Second, Petitioner claims that his trial counsel provided ineffective assistance by failing to challenge interference with commerce under the Hobbs Act.[4] Pet'r's Mot. at 27. Specifically, he contests the Government's jurisdiction to prosecute him pursuant to 18 U.S.C. § 1951(a) and argues that counsel should have contested the sufficiency of the evidence of such. *Id.* at 31.

---

[4] *See supra* note 2.

However, Petitioner fails to rebut the strong presumption that his "counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Counsel contends that he "made all legally proper objections, fully prepared the case" and "contested all the charges." Mem. Opp'n at Ex. 1, at ¶¶ 6, 9. During trial, Petitioner's defense was primarily focused on contesting his involvement with the offense. *See, e.g.*, Trial Tr. Apr. 16, 2018, 28:22-29:08, ECF No. 191.[5] Counsel's decision to focus Petitioner's defense on whether Petitioner was at all involved in the offense rather than whether such offense affected interstate commerce was not deficient, but rather demonstrative of effective advocacy. *See United States v. Mason*, 774 F.3d 824, 830 (4th Cir. 2014) ("Attorneys can be selective and strategic without risking an ineffective assistance of counsel claim . . . [because] [a]ttorneys exist to exercise professional judgment, which often involves setting priorities. Indeed, it can be positively detrimental to a client's chances not to set priorities but rather to scattershot the case by raising every objection at trial." (internal citations omitted)); *see also Terry*, 366 F.3d at 317.

Even assuming that counsel was deficient by not challenging interference with commerce, Petitioner nonetheless fails to establish he suffered any prejudice. *Strickland*, 466 U.S. at 694. Petitioner states that "[i]f counsel would've raised this issue and put the [G]overnment to the test, counsel most likely would have prevailed." Pet'r's Mot. at 31. Yet, the record demonstrates that there is no reasonable probability that the result of the trial would have been different had counsel done so. *Strickland*, 466 U.S. at 694; *see United States v. Taylor*, 754 F.3d 217, 222-25 (4th Cir.

---

[5] During closing argument, for instance, Petitioner's counsel argued the following:
> I told you that this was going to be a case about whether or not [the Government] could prove beyond a reasonable doubt that my client was involved in this crime. I would submit to you, for all of the reasons that I'm going to go over here in a few minutes, they've not done that, they've not come close to doing that. I also told you that there would be no dispute that there was a crime committed, that Mr. Joseph was killed, and that he was killed with a gun, and that he was, you know, killed by some individuals, two or more.

Trial Tr. Apr. 16, 2018, at 28:24-29:08.

2014) (outlining the low burden of proof the Government bears in proving an effect on interstate commerce, affirming that drug dealing is an inherently economic enterprise affecting interstate commerce, and finding it was reasonable for a jury to conclude that robberies or attempted robberies aimed at obtaining drugs and drug proceeds affected interstate commerce); *see also United States v. Williams*, 342 F.3d 350, 354 (4th Cir. 2003) ("The Hobbs Act also does not require proof that a defendant intended to affect commerce or that the effect on commerce was certain; it is enough that such an effect was the natural, probable consequence of the defendant's actions."). The Court therefore finds that counsel's performance was not deficient and, even if it were, there is no reasonable probability that the result of the trial would have been different. *Strickland*, 466 U.S. at 687-94.

### C. Failure to Object to Jury Instruction

Petitioner next argues that his counsel was ineffective by not objecting to Jury Instruction Number 22, defining "crime of violence," because it is unconstitutionally vague after *Johnson v. United States*, 135 S. Ct. 2551 (2015), *Session v. Dimaya*, 138 S. Ct. 1204 (2018), and *United States v. Davis*, 139 S. Ct. 2319 (2019).[6] Pet'r's Mot. at 32-35. As a preliminary matter, counsel could not have objected to the instruction based on *Dimaya* or *Davis* because the Supreme Court decided *Dimaya* on the same day that the jury returned a guilty verdict for Petitioner and decided *Davis* over a year later. *See* Jury Verdict (signed April 17, 2018). The question, therefore, is whether counsel was deficient in failing to object in light of *Johnson*. *See United States v. Morris*,

---

[6] *See supra* note 2. The Court notes that, unlike his other claims, Petitioner seemingly attempts to overcome procedural default by alleging cause and prejudice. Pet'r's Mot. at 34-35. However, he confuses the standard to overcome procedural default with the *Strickland* standard. *See id.* at 34 (defining the "Strickland Test" as the cause and prejudice or actual innocence standard). Since the substance of his argument concerns whether his counsel was ineffective in failing to object to this instruction, the Court analyzes it accordingly. *See id.* (evaluating "cause" in the context of whether counsel's decision could be considered strategic). Further, even if the Court were to analyze Petitioner's claim under the cause and prejudice standard, it would nonetheless find that Petitioner fails to satisfy such. *See Mikalajunas*, 186 F.3d at 492; *Benson*, 957 F.3d at 239-40.

11

917 F.3d 818, 823 (4th Cir. 2019) ("To avoid the distorting effects of hindsight, claims under *Strickland*'s performance prong are 'evaluated in light of the available authority at the time of counsel's allegedly deficient performance.'") (quoting *United States v. Carthorne*, 878 F.3d 458, 466 (4th Cir. 2017)).

The Court finds that counsel was not deficient because, at the time, he would have raised an unsupported novel argument by objecting to the residual clause of 18 U.S.C. § 924(c)(3), defining a "crime of violence," on the basis of *Johnson*, which evaluated the residual clause of 18 U.S.C. § 924(e)(2)(B), defining a "violent felony." *Morris*, 917 F.3d at 823 ("A lawyer does not perform deficiently by failing to raise novel arguments that are unsupported by then-existing precedent. Nor does counsel fall below *Strickland*'s standard of reasonableness by failing to anticipate changes in the law, or to argue for an extension of precedent." (internal citations omitted)). Indeed, in affirming co-defendant Wallace's conviction for the same offense, the Fourth Circuit rejected the very novel argument that Petitioner contends his counsel should have raised. *See Benson*, 957 F.3d at 239-40. Relying on its previous decision in *United States v. Mathis*, 932 F.3d 242, 266 (4th Cir. 2019), the Fourth Circuit affirmed that a "Hobbs Act robbery constitutes a crime of violence under the force clause at § 924(c)(3)(A), *not* the residual clause at § 924(c)(3)(B)." *Id.* at 240 (emphasis in original). Accordingly, it found that *Davis* had no bearing on whether a Hobbs Act robbery constitutes a valid crime of violence for the purposes of a § 924(c)(1) conviction. *Id.* The Court therefore finds that counsel's performance was not deficient and, even if it were, there is no reasonable probability that outcome would have been different. *Strickland*, 466 U.S. at 687-94.

### D. Failure to Raise Double Jeopardy Challenge

Fourth, Petitioner argues that counsel was ineffective in failing to raise a double jeopardy

12

challenge to his single conviction under both 18 U.S.C. § 924(c) and § 924(j). Pet'r's Mot. at 36. The Fourth Circuit in *United States v. Palacios*, 982 F.3d 920 (4th Cir. 2020), addressed this very issue. There, the court held for the first time, and notably after Petitioner was tried and sentenced, that "the Double Jeopardy Clause prohibits imposition of cumulative punishments for § 924(c) and § 924(j) based on the same conduct," but counsel was not constitutionally deficient in failing to raise it because the claim was not "sufficiently foreshadowed at the time of trial." *Palacios*, 982 F.3d at 925-27 (relying, in part, on the rule from *Carthorne* that claims of ineffective assistance against the strength of case law are evaluated as they existed at the time of the allegedly deficient representation). It is undisputed that § 924(c) is a lesser-included offense of § 924(j). *Id.* at 924; Mem. Opp'n at 12. Further, as Petitioner points out, his case is distinguishable from *Palacios* because the defendant in that case was sentenced in 2008 and Petitioner was sentenced ten years later, during which time the law on this issue developed in sister circuits. Pet'r's Mot. at 40; *see also Palacios*, 982 F.3d at 925 (discussing the absence of precedent on this issue in 2008 and the development of such beginning in 2011 in sister appellate circuits).

Yet, the Court need not reach the question of the state of the law at the time Petitioner was sentenced because the Court did not impose cumulative sentences. Rather, the Court imposed a life sentence on Count One followed by five years of supervised release. J. at 1-3. Accordingly, there was no potential double jeopardy claim for counsel to raise.[7] *See United States v. Ayala*, 601 F.3d 256, 265 (4th Cir. 2010) ("The Double Jeopardy Clause . . . protects against multiple punishments for the same offense . . . It does not, however, prohibit the legislature from punishing the same act or course of conduct under different statutes." (internal citations and quotations

---

[7] Counsel also asserts that "[n]o motion regarding a claim of double jeopardy related to the charges . . . was filed because there is no legal or factual basis for such a motion and it would have been frivolous in counsel's professional opinion." Mem. Opp'n at Ex. 1, at ¶ 8.

13

omitted)); *see also Palacios*, 982 F.3d at 924 ("Instead, the Double Jeopardy Clause prevents courts from imposing cumulative sentences unless Congress intended to authorize such multiple punishment."). The Court therefore finds that counsel was not constitutionally deficient in failing to raise a double jeopardy challenge. *Strickland*, 466 U.S. at 687.

### E. Failure to Request Limiting Instruction for DNA Evidence

Fifth, Petitioner alleges that his counsel was ineffective for not requesting a limiting instruction as to the DNA evidence. Pet'r's Mot. at 42. In substance, however, Petitioner again argues that his counsel should have objected to the Government's assertion in closing argument that Petitioner's DNA was circumstantial evidence of his presence at the scene of the crime at the time it was committed.[8] *See id.* ("The fact is that when counsel did not object to the [G]overnment['s] narrative, that Benson was at the scene due to the DNA evidence, the presumption of innocence no longer stood with the defendant."). For the reasons previously stated, the Court finds this claim to be without merit.[9]

### F. Failure to Request Second Attorney Pursuant to *Boone*

Petitioner's final claim is that his trial counsel was ineffective in depriving him of his statutory right to two attorneys pursuant to 18 U.S.C. § 3005 and *United States v. Boone*. Pet'r's Mot. at 44-46. Section 3005 provides, in relevant part, that "[w]hoever is indicted for treason or other capital crime shall be allowed to make his full defense by counsel; and the court before which the defendant is to be tried, or a judge thereof, shall promptly, upon the defendant's request, assign 2 such counsel, of whom at least 1 shall be learned in the law applicable to capital cases." 18

---

[8] The Government asserts that Petitioner already challenged the Government's closing argument and jury instructions on direct appeal, and Petitioner is therefore barred from raising it here. Mem. Opp'n at 13. As mentioned, the Court construes Petitioner's pleadings liberally and evaluates his claims as those for ineffective assistance of counsel. *See supra* note 2. Moreover, although Petitioner challenged jury instructions regarding his state charges and co-defendant statements on direct appeal, he did not specifically challenge the Court's failure to provide a limiting instruction on DNA evidence. *See Benson*, 957 F.3d at 228-37. Regardless, his claim fails.

[9] *See* discussion *supra* Section III.A.

14

U.S.C.A. § 3005 (West) (1994). In *Boone*, the Fourth Circuit defined a "capital crime" as "one in which the death penalty *may* be imposed under the terms of the enabling statute." 245 F.3d at 359 (affirming its holding in *United States v. Watson*, 496 F.2d 1125, 1126-27 (4th Cir. 1973)) (emphasis added). Accordingly, the Fourth Circuit held that the language of § 3005 mandates that, upon indictment, a defendant charged with a capital crime is statutorily entitled to representation by two attorneys, if the defendant requests such, regardless of whether the Government intends to pursue the death penalty. *Id.*; *accord United States v. Chavez*, 894 F.3d 593, 606 (4th Cir. 2018); *but see United States v. Cordova*, 806 F.3d 1085, 1101 (D.C. Cir. 2015) (collecting cases from a majority of sister circuits holding that courts are only required to assign second attorney when defendants face the death penalty, noting the Fourth Circuit is the only circuit that has held otherwise). The Fourth Circuit also affirmed that such a "defendant ha[s] an absolute statutory right to two attorneys under § 3005." *Boone*, 245 F.3d at 360-61; *see also United States v. Shepperson*, 739 F.3d 176, 180 (4th Cir. 2014) (holding "the right to additional counsel under § 3005 is solely statutory," not constitutional).[10]

Although Petitioner is correct that his right to two attorneys under § 3005 and Fourth Circuit precedent exists whether or not the Government intends to pursue the death penalty, he nonetheless ignores the statutory requirement that he request to exercise this right.[11] *See* 18 U.S.C. § 3005 ("[T]he court . . . shall promptly, *upon the defendant's request*, assign 2 such counsel."

---

[10] Contrary to the Government's assertion, that Petitioner's right under Section 3005 is statutory, and not constitutional, does not in and of itself make his claim incognizable under Section 2255. *See* Mem. Opp'n at 14. Because Petitioner claims that his Sixth Amendment right was violated when his counsel failed to request a second attorney, his ineffective assistance of counsel claim under Section 2255 is proper. *Williams*, 977 F.2d at 871.

[11] Petitioner has this right because he was charged with a violation of 18 U.S.C. § 924(c) and § 924(j). Section 924(j)(1), relevant here, provides: "A person who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm, shall (1) if the killing is a murder (as defined in section 1111), be punished by death or by imprisonment for any term of years or for life."). Accordingly, under Fourth Circuit precedent, Petitioner was charged with a capital crime and is therefore entitled to two attorneys even though the Government did not pursue the death penalty against him. *Boone*, 245 F.3d at 359.

15

(emphasis added)); *see also Shepperson*, 739 F.3d at 179-80 (citing circuit precedent "apply[ing] § 3005's clear mandate of a defendant's request"). The Fourth Circuit has not yet addressed the specific contours of this mandate, including the duties, if any, of defense counsel with regard to such, nor the question of whether counsel is ineffective for failing to request a second attorney when their client is indicted for a capital crime for which they do not face the death penalty. *See Chavez*, 894 F.3d at 606-07 (acknowledging both defendant and defense attorney could "request" district court to assign second attorney under § 3005 but finding court did not abuse its discretion after sua sponte appointing two attorneys, removing one for medical issues, and proceeding to trial when first attorney could not find suitable replacement); *Shepperson*, 739 F.3d at 180 (district court not required to alert defendant to a solely statutory right and court's failure to do so does not create presumption that defendant received ineffective assistance of counsel); *United States v. Robinson*, 275 F.3d 371, 384 (4th Cir. 2001) (declining to reverse conviction despite plain error where defendant charged with capital crime received two attorneys during pretrial proceedings but second attorney was relieved of duties after government withdrew notice of intent to seek death penalty); *see also Scott v. United States*, No. 2:13CR20, 2017 WL 6541466, at *6 (E.D. Va. Dec. 21, 2017) (defendant failed to establish ineffective assistance of counsel when second attorney did not attend his guilty plea hearing).

"The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. Yet, neither Petitioner nor the Government nor the Fourth Circuit have addressed the status of these norms.[12] Although

---

[12] *See Capital Appointments: Number of Attorneys*, U.S. Court of Appeals for the Fourth Circuit, https://www.ca4.uscourts.gov/information-for-appointed-counsel/capital-cases/capital-appointments (last visited July 20, 2022) (noting that financially eligible defendants indicted for capital crimes are entitled to the appointment of two attorneys "upon request," without defining the proper procedures for that request); *Chapter 6, § 620: Appointment of Counsel in Capital Cases*, U.S. Courts, https://www.uscourts.gov/rules-policies/judiciary-policies/cja-guidelines/chapter-6-ss-620-appointment-counsel-capital-cases (last revised Jan. 5, 2022) (outlining procedures for appointing counsel in federal death penalty cases, but not for requesting two attorneys).

professional norms are established for counsel who represent defendants that actually face the death penalty, the same is not true for counsel representing defendants charged with a capital crime but for whom the Government does not intend to seek the death penalty.[13] The Court therefore cannot conclude that counsel's conduct falls "outside the wide range of professionally competent assistance" in light of "prevailing professional norms," especially in light of the fact that the Fourth Circuit is the only circuit to read § 3005 to impose such a mandate and has not addressed what professional expectations accompany it. *Strickland*, 466 U.S. at 690.

Even if this performance were deficient, however, Petitioner again fails to show that he was prejudiced. *Strickland*, 466 U.S. at 697. Specifically, Petitioner argues that there would have been a "fair probability of a different outcome" in his case had he been appointed a second attorney because "two minds are better than one." Pet'r's Mot. at 46. However, Petitioner fails to allege whether his counsel was unqualified, incapable of handling the case on his own, or made any errors demonstrating his incapability of handling the case such that the appointment of a second attorney would have changed the outcome of his proceeding. *See Chavez*, 894 F.3d at 607 (defendant's frustration with withdrawal of second attorney and proceeding to trial with one attorney was insufficient to overturn conviction because "defendants are not invariably entitled to go to trial with their preferred counsel"). Indeed, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding" because then "[v]irtually every act or omission of counsel would meet that test." *Strickland*, 466 U.S. at 693. Petitioner's counsel states that he "did not request an additional counsel because it was not necessary or authorized." Mem. Opp'n at Ex. 1, at ¶ 10. Petitioner has failed to meet his burden of affirmatively proving

---

[13] *See, e.g., Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases*, 31 Hofstra L. Rev. 913 (2003); *Supplementary Guidelines for the Mitigation Function of Defense Teams in Death Penalty Cases*, 36 Hofstra L. Rev. 677 (2008).

otherwise. *Strickland*, 466 U.S. at 693. Accordingly, the Court finds that counsel's performance was not deficient and, even if it were, there is no reasonable probability that outcome would have been different. *Strickland*, 466 U.S. at 687-94.

## IV. CONCLUSION

For the reasons stated above, Petitioner's § 2255 Motion is **DENIED**.

This Court may issue a certificate of appealability only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b)(1). This means that Petitioner must demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, n.4 (1983)); *see United States v. Swaby*, 855 F.3d 233, 239 (4th Cir. 2017). Petitioner's claims are based upon incorrect interpretations of statutory provisions and judicial precedent. As such, Petitioner fails to demonstrate a substantial showing of a denial of a constitutional right, and a Certificate of Appealability is **DENIED**.

In addition, the Court **ADVISES** Petitioner that he may appeal from this final Order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510. The Clerk must receive this written notice within sixty (60) days from this Order's date. The Court **DIRECTS** the Clerk to provide a copy of this Order to all Parties.

**IT IS SO ORDERED.**

Newport News, Virginia
July 27, 2022

Raymond A. Jackson
United States District Judge
UNITED STATES DISTRICT JUDGE